UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| TEXAS HEALTH AND HUMAN SERVICES COMMISSION,<br>    *Plaintiff*, | |
| v. | |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; XAVIER BECERRA, in his official capacity as Secretary of the United States Department of Health and Human Services; CHIQUITA BROOKS- LASURE, in her official capacity as Administrator for the Centers for Medicare and Medicaid Services; DANIEL TSAI, in his official capacity as Deputy Administrator and Director of the Center for Medicaid and CHIP Services; and CHARLIE L. ARNOLD, in his official capacity as Director of the Division of Financial Policy for the Center for Medicaid and CHIP Services,<br>    *Defendant*s. | Civil Action No. 1:24-cv-01520 |

**TEXAS HEALTH AND HUMAN SERVICES COMMISSION'S ORIGINAL COMPLAINT**

1.  Texas Health and Human Services Commission (Texas HHSC) brings this action seeking declaratory and injunctive relief against attempted enforcement of 42 C.F.R. § 433.54 by the Centers for Medicare and Medicaid Services (CMS) by way of State Medicaid Director Letter #14-004 (SMDL #14-004).

1

2. SMDL #14-004 was released on May 9, 2014, without the notice and comment required by the Administrative Procedures Act (APA) to promulgate changes to a rule.

3. Despite CMS's representation that SMDL #14-004 was intended to "help clarify for states what is authorized" under the applicable federal statutes and regulations, the "clarification" of SMDL #14-004 was contrary to the plain text of 42 C.F.R. § 433.54 and marked a significant interpretive reimagining of the meaning of 42 C.F.R. §433.54.

4. As is relevant here, SMDL #14-004 deems certain public-private collaborations to constitute impermissible hold harmless arrangements resulting in non bona fide provider related donations, even though the text of 42 C.F.R. § 433.54 itself does not contemplate the public-private partnerships described in SMDL #14-004.

5. This unlawful interpretation of the rule, effectuated by enforcement of SMDL #14-004 without proper notice and comment rulemaking under the APA, would likely force the Texas HHSC to recoup tens of millions of dollars in Medicaid payments made to safety net health care providers between 7 and 10 years ago, significantly impeding the level and quality of care these providers would be able to provide to the residents of their community.

6. CMS's enforcement of SMDL #14-004 without proper notice and comment rulemaking is an arbitrary and capricious agency action. CMS has previously attempted to rely on the SMDL to disallow other funds, and the validity of the SMDL is an issue in ongoing litigation between HHSC and the U.S. Department of Health and Human Services in case 3:19-cv-02857-S in the U.S. District Court for the Northern District of Texas. As such, the Court should stay or enjoin CMS's enforcement of SMDL #14-004 and CMS's resulting attempted disallowance of $83,833,972 for fiscal years 2014-2017 until litigation on SMDL #14-004 has concluded.

7. Texas HHSC reserves its right to an administrative appeal, should CMS issue a disallowance. Filing of this document does not constitute a waiver of Texas HHSC's right to an administrative appeal.

## I.    PARTIES

8. Plaintiff Texas Health and Human Services Commission (Texas HHSC) is an agency of the State of Texas and is responsible for administering the Medicaid program in Texas.

9. Defendant United States Department of Health and Human Services (HHS) is an executive agency within the federal government of the United States.

10. Defendant Xavier Becerra is the Secretary of HHS and is sued in his official capacity.

11. Defendant Chiquita Brooks-LaSure is the Administrator for the Centers for Medicare and Medicaid Services (CMS) and is sued in her official capacity.

12. Defendant Daniel Tsai is the Deputy Administrator and Director of the Center for Medicaid and CHIP Services and is sued in his official capacity.

13. Defendant Charlie L. Arnold is the Director of the Division of Financial Policy for the Center for Medicaid and CHIP Services and is sued in his official capacity.

## II.    JURISDICTION AND VENUE

14. This Court has jurisdiction over this action pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1331. This Court has authority to grant the remedy Texas seeks pursuant to 28 U.S.C. §§ 2201 and 2202 and 5 U.S.C. § 706.

15. Venue is proper in this district pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e).

## III.    BACKGROUND

### A. Medicaid Program

16. Medicaid is a joint federal-state healthcare program in which states provide a level of funding that is matched by financial assistance from the federal government. 42 U.S.C. § 1396b.

17.While the state must provide not less than 40 percent of the state share of Medicaid funds, local government entities may provide up to 60 percent of state

share funding. 42 U.S.C. § 1396a(a)(2). Each state receives federal matching funds (federal share, federal financial participation, or FFP). *See* 42 C.F.R. §§ 400.203, 430.1; 45 C.F.R. § 95.4.

18. Texas participates in the Medicaid program under its Medicaid State Plan and a section 1115 waiver, developed by the Texas HHSC and approved by CMS. *See* 42 U.S.C. §§ 1315, 1396a; 42 C.F.R. §§ 430.10-430.25.

**B. Hospital Medicaid supplemental payments in Texas**

19. As is true in many states, the healthcare system was originally designed to reimburse providers using a fee-for-service model, wherein payments were made regardless of whether the client being served had an improvement in their health or condition. In 2011, Texas pursued and received a waiver under Section 1115 of the Social Security Act, which enabled Texas to implement transformational models that were intended to focus on improving health care quality in the Medicaid program.

20. Federal law permits states to supplement a Medicaid agency's payments for services provided by hospitals and other Medicaid providers. Neither supplemental Medicaid payments nor base payments for Medicaid services may include improper provider-related donations, described further below.

21. In the Delivery System Reform Incentive Payment (DSRIP) Program, a now-discontinued program that was administered by Texas HHSC to provide supplemental payments in exchange for achievement of quality improvement

milestones and metrics, the state share of the Medicaid supplemental payments for non-state entities was transferred to Texas HHSC from local governmental units.

22. In many counties, a large portion of the state share of supplemental Medicaid payments comes from local governmental entities, including county health care districts.

23. In 2013, the Travis County Hospital District (d.b.a. Central Health) and Seton Family of Hospitals (Seton) formed Community Care Collaborative (CCC), a 501(c)(3) nonprofit corporation.[1] Seton and Central Health had a pre-existing public-private partnership that provided services to low-income persons in Travis County. Seton and Central Health were also partnering on a plan to establish a new hospital that would be affiliated with a new medical school authorized by Travis County voters that same year.

24. The purpose of CCC was to provide a framework for implementing Texas' 1115 demonstration waiver and an integrated health delivery system for the uninsured and underinsured populations of Travis County.

**C. Provider-related donations regulation**

25. The Social Security Act (the Act) requires total expenditures for medical assistance in which a state claims FFP be reduced by the sum of any revenues

---

[1] The Travis County Healthcare District does business as Central Health. Seton is a private hospital chain. Central Health and Seton are co-owners of Community Care Collaborative (CCC).

received by the state in the form of impermissible provider-related donations. 42 U.S.C. § 1396b(w)(1)(A).

26. The Act defines "provider-related donation" as any donation or other voluntary payments (in-cash or in-kind) made directly or indirectly to a state or unit of local government by a health care provider, an entity related to a health care provider, or an entity providing goods or services under the state plan and paid as administrative expenses. 42 U.S.C. § 1396b(w)(2)(A).

27. A state may receive provider-related donations without a reduction in FFP if the statutory requirements pertaining to bona fide donations are met. 42 U.S.C. § 1396b(w)(1)(A). A "bona fide provider-related donation" is defined as a provider-related donation that has no direct or indirect relationship to payments made under Title XIX of the Social Security Act to that provider, to providers furnishing the same class of items and services as that provider, or to any related entity. 42 U.S.C. § 1396b(w)(2)(B).

28. CMS's predecessor, the Health Care Financing Administration (HCFA), implemented this statutory language through rulemaking in 1993. Under the applicable regulations, donations made by a health care provider to an organization, which in turn donates money to the state, may be considered indirect donations to the state by the health care provider. 42 C.F.R. § 433.52 (provider-related donation). HCFA defined bona fide donations in accordance with the Social Security Act: a

7

bona fide donation is a provider-related donation that has no direct or indirect relationship to Medicaid payments to that provider, to providers furnishing the same class of items and services as that provider, or to any related entity as established by the state to the satisfaction of the Secretary. 42 C.F.R. § 433.54(a). Provider-related donations are determined to have no direct or indirect relationship to Medicaid payments if the donations are not returned to the individual provider, provider class, or related entity under a hold harmless provision or practice. 42 C.F.R. § 433.54(b).

29. 42 C.F.R. § 433.54(c) describes under what circumstances a hold harmless practice exists. Under § 433.54(c), a hold harmless practice exists if any of the following applies:

a. (1) The State (or other unit of government) provides for a direct or indirect non-Medicaid payment to those providers or others making, or responsible for, the donation, and the payment amount is positively correlated to the donation. A positive correlation includes any positive relationship between these variables, even if not consistent over time.

b. (2) All or any portion of the Medicaid payment to the donor, provider class, or related entity, varies based only on the amount of the donation, including where Medicaid payment is conditional on receipt of the donation.

c. (3) The State (or other unit of government) receiving the donations provides for any direct or indirect payment, offset, or waiver such that the provision of that payment offset, or waiver directly or indirectly guarantees to return any portion of the donation to the provider (or other parties responsible for the donation).

### D. State Medicaid Director Letter 14-004

30. On May 9, 2014, CMS released SMDL #14-004, which purported to "clarify" prior guidance by describing collaborative charity case arrangements as impermissible, or non-bona fide, provider-related donations. This was a reversal of agency position.

31. CMS deemed certain public-private collaborations to constitute impermissible "hold harmless arrangements" even though the regulatory language did not contemplate the public-private partnerships in question.

### E. CMS proposed rulemaking

32. On November 18, 2019, CMS published in the Federal Register a proposed rulemaking action titled "Medicaid Fiscal Accountability Regulation" (MFAR). 84 Fed. Reg. 63722. This extensive proposal included amending 42 C.F.R. § 433.52 to "clarify" that a "donation" would include instances in which the net effect of a public-private partnership creates "a reasonable expectation that the provider, provider class, or related entity will receive a return of all or a portion of the donation either directly or indirectly."

33. CMS stated in the November 2019 proposal that "[i]n line with the Board's reasoning, we are proposing to establish a net effect standard to look at the overall arrangement in terms of the totality of circumstances to judge if a non-bona fide donation… has occurred." *Id.* at 63736.

34. The November 2019 proposal would have amended 42 C.F.R. § 433.52 to add a definition of "net effect" that includes the "reasonable expectation of participating entities." *Id.* at 63738. The proposal would also have amended 42 C.F.R. § 433.54(c)(3) to specify that a direct guarantee will be found when "the net effect of an arrangement…results in a reasonable expectation that the provider, provider class, or related entities will receive a return of all or a portion of the donation either directly or indirectly." *Id.* at 63739.

35. Less than a year after MFAR's proposal, CMS announced that it was withdrawing the rule. In the formal withdrawal notice, CMS noted that it had received over 10,000 comments, including numerous comments that CMS "lacked statutory authority for its proposals and was creating regulatory provisions that were ambiguous or unclear and subject to excessive Agency discretion." 86 Fed. Reg. 5105.

## IV.    HARM TO TEXAS

### A. Threatened $83,833,972 disallowance

36. Defendants' implementation of a rule that has not been properly promulgated is set to cost Texas HHSC $83,833,972 that would otherwise be used to provide health care to uninsured and underinsured Texans.

37. By letter dated November 27, 2024, CMS notified Texas HHSC that an audit conducted for fiscal years 2014-2017 and that was completed in August of 2020

revealed Texas HHSC inappropriately received $83,833,927 in FFP through impermissible provider-related donations. CMS allowed Texas HHSC 15 days to respond and agree to return the money but did not explain why CMS was choosing to take action now, more than 4 years after the audit was completed.

38. The 2020 audit report that CMS is threatening to implement relies on SMDL #14-004 and the "reasonable expectation" test, which is found nowhere in 42 C.F.R. § 433.54(c), but which CMS tried and failed to codify in MFAR.

**B. Defendants are attempting to enforce a policy that is still being challenged in ongoing litigation.**

39. Texas HHSC and CMS are still in the midst of ongoing litigation regarding this exact issue. *Texas Health and Human Services Commission v. United States Department of Health and Human Services, and Alex M. Azar, II, Secretary of Health and Human Services*; Civil Action No. 3:19-cv-2857, in the United States District Court for the Northern District of Texas Dallas Division (2019 Case).[2]

40. In 2016, CMS attempted to disallow $26,844,851 of the federal share of uncompensated care payments to private hospitals in Dallas and Tarrant counties for the fourth quarter of federal fiscal year 2015.

---

[2] Alex M. Azar, II was the United States Secretary of Health and Human Services when the litigation was filed in 2019. Mr. Azar served in that role until 2021, when he was succeeded by current secretary Xavier Becerra.

41. Like the current situation, CMS alleged the private hospitals' provision of charity care to patients who previously received such care, or a portion thereof, from a governmental entity constituted impermissible provider-related donations.

42. Texas sought relief via agency administrative procedures.

43. HHS Departmental Appeals Board (DAB) affirmed the disallowance.

44. Texas appealed the agency's decision. The case, which has been fully briefed, is still pending in the Northern District of Texas, Dallas Division (2019 Case). A stay has been ordered pending decision by the Court.

45. Defendants are now attempting to again apply SMDL #14-004, which has not been promulgated in accordance with the Administrative Procedure Act (APA), 5 U.S.C. § 553.

46. The audit report that CMS now threatens to implement relies on the DAB Decision, even though the validity of the decision is in dispute.

## V.    CLAIMS FOR RELIEF

**COUNT 1:** Violation of APA, 5 U.S.C. § 706(2)(A): Arbitrary, Capricious, Abuse of Discretion, Not Otherwise in Accordance with Law

47. All foregoing allegations are repeated and realleged as if fully set forth herein.

48. The application of 42 C.F.R. § 433.54 and SMDL #14-004 to support a disallowance constitutes "agency action" pursuant to 5 U.S.C. § 551(13) for the purposes of review under the APA, 5 U.S.C. § 702.

49. Under the APA, the agency action is arbitrary and capricious and therefore violates the APA, 5 U.S.C. § 706(2)(A).

50. Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

51. The agency action is neither reasonable nor reasonably explained.

52. Defendants did not articulate a satisfactory explanation for its actions.

53. Defendants' reliance on SMDL #14-004 is an adoption of arbitrary tests and presumptions without a satisfactory explanation for doing so.

54. SMDL #14-004 conflicts with 42 C.F.R. § 433.54 as it was not promulgated under the APA, 42 U.S.C. § 553, making it not in accordance with law.

55. Defendants abused their discretion by relying on DAB Decision No. 2886, which was contested by Texas HHSC and is still pending decision in federal court.

56. Defendants' actions were arbitrary and capricious by relying on SMDL #14-004 to find impermissible provider-related donations as well as the initial date from which it calculates the amount of the requested refund.

**COUNT 2:** Violation of APA, 5 U.S.C. § 706(2)(C): Agency Action in Excess of Statutory Jurisdiction or Authority

57. All foregoing allegations are repeated and realleged as if fully set forth herein.

58. SMDL #14-004 challenged here constitutes "agency action" pursuant to 5 U.S.C. § 551(13) for the purposes of review under the APA, 5 U.S.C. § 702.

59. Under the APA, a court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

60. Defendants may only exercise the authority conferred upon them by statute and may not legislate through regulation in order to implement the perceived intent of Congress.

61. CMS exceeded its authority when it circumvented statutory procedure found in 5 U.S.C. § 553, issued SMDL #14-004, and then treated the policy in SMDL #14-004 with the effect of a rule.

### PRAYER

For the reasons explained above, Texas HHSC respectfully requests this Court:

a. Enter a declaration, pursuant to 28 U.S.C. § 2201, that CMS's attempt to implement SMDL #14-004 as a rule was arbitrary and capricious, an abuse of discretion, not in accordance with law, and is invalid under 5 U.S.C. § 706(2).

b. Enter a declaration pursuant to 28 U.S.C. § 2201, that CMS issued SMDL #14-004 without satisfying the notice and comment requirement of 5 U.S.C. § 553; and

c. Award such other and further relief as this Court deems appropriate.

14

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/ Lauren McGee*
LAUREN MCGEE
State Bar No. 24128835
Assistant Attorney General
Office of the Attorney General of Texas
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-3203
Lauren.McGee@oag.texas.gov

*Attorneys for Plaintiff Texas Health and Human Services Commission*